*By the Court,

Nelson, C. J.
The first cause specified under the [*624] demurrer to the first count is, that it does not appear in and by the said count that the plaintiff has any right or title to maintain an action for the supposed libel therein set forth. The second, that the libel appears upon its face, and by the averments and innuendoes, to have been published of and concerning a newspaper called the Albany Argus, and that the plaintiff has no right to maintain an action for a libel on that paper: and the third, that the count is double, and seeks to recover damages for two distinct and separate causes of action, viz: first, for the alleged publication of the libel upon the plain tiff personally; and second, for the alleged publication of a libel upon a newspaper of which he is the editor. These general objections to the count are brought together, because one satisfactory answer may be given to all of them upon the pleadings as set forth.
The pleader in the introductory part of the declaration has averred, that the plaintiff, before and at the time of the publication of the libel, was state printer to the state, and editor of a newspaper called the Albany Argus, facts well known to his neighbors and other citizens of the state ; and then adds that the libel was published of and concerning the plaintiff, and of and concerning him by the terms, the state printer, editor of the Albany Argus, he. Now, reading the alleged libel in connection with the introductory matter and colloquium, it is impossible to doubt but that the plaintiff is directly pointed out and referred to by the use of the several terms and phrases found in the publication ; such as, the state printer—the editor of the Albany Argus—the malignant Albany Argus, &c., with which it is freely interspersed. The demurrer admits the truth of the averments, to wit, that *476 the plaintiff was state printer, and editor at the time, and which was well known to the public, and that the libel was published of and concerning him personally by means of these several phrases, thereby, in effect, describing him as distinctly and publicly as if referred to by name. The books are full of cases illustrating the principle upon which the pleader has gone in framing the count: such as, “ The parson of Dale is a thief,” [ *625 J where it was holden that he who was parson at *the time the words were spoken might maintain the action. 3 Bulst. 326. See also Fleetwood v. Curle, Cro. J. 557 ; Starkie on Slander, 290. There is no foundation therefore for the several objections taken : namely, that the plaintiff has not made out a right to bring the action ; or that the libel was published of and concerning a newspaper, and not of the plaintiff; and that he seeks to recover damages for two separate and distinct causes of action, first for an alleged libellous publication upon a newspaper, and second, upon himself personally ; for the whole scope and effect of the averments on this point of the declaration, is to shew that the publication was directed against the plaintiff alone, and intended to fix upon him personally the criminal conduct imputed therein.
The fourth cause of demurrer, as specified is, that the count does not aver that the supposed libel was published of and concerning the Frie Canal, or the banks, gates, water, or navigation thereof, or of and concerning the Mohawk river ; and that there is not sufficient introductory matter set forth in the count to warrant the innuendoes ; such as, meaning the said Erie canal—the Mohawk river—waste gate of the Erie canal, and the like ; and the fifth cause of demurrer is, that the alleged libel does not per se impute to the plaintiff the offences and misconduct complained of in the count; and that there is no sufficient inducement or statement of introductory matter or colloquium, with connecting averments and innuendoes to help out the defect, and shew upon the record that the offences and miscon duct were in fact imputed or intended to be charged against the plaintiff. We have already seen that the count is sufficiently certain in pointing out the plaintiff, as the person referred to in the supposed libel, and against whom the charges therein contained are directed; and the general question, ás I understand it, intended to be raised by the fourth and fifth clauses of demurrer, is, whether the averments and innuendoes fixing a particular meaning to the publication, and which as insisted conveys a libellous imputation upon the plaintiff, is warranted by the terms of the article ; and if not, whether the article of itself, and without such averments and innuendoes, [ *626 ] imports such ^libellous matter. It is familiar doctrine in this action, that where the slanderous charge or imputation may be collected from the words themselves, or the scope of the publication, it is unnecessary to make any averment as to circumstances to the supposed exist > *477 ence of which the words refer: for the slander, which is the ground of the proceeding, appearing on the face of the publication, it is matter of indifference in respect to the cause of action whether'the circumstances referred to really existed, or were invented by the defendants. Many cases will be found in the books illustrating this proposition. See Starkie on Slander, 281—2. Thus, when it is said of one, “ That is the man who killed my husband,” no averment of the husband’s death is necessary, for the defendant’s words have ascertained the death. 8 Mod. 24, Cro. Car 337. So also where the libellous meaning is apparent on the face of the publication, innuendoes and averments are wholly unnecessary ; and if introduced, may be rejected as surplusage. Rex v. Horne, Cowp. 682 ; 9 East, 92 ; 2 M. & S. 591 ; 4 B. & Ad. 821, and in order to ascertain such meaning, courts are bound to understand the words in the same sense as the rest of the world would understand them, namely, according to their plain and ordinary import. How, reading the heading, “ Erie Canal Incendiaries,” together with the rest of the libel, no one can doubt about the true import of the charges embodied therein : nor but that the meaning imputed by the pleader is fully borne out by the natural and ordinary understanding of the language. Indeed, so clear and unambiguous are the charges against the plaintiff of wickedly encouraging and inflaming a band of desperate incendiaries along the Erie canal, to commit the various acts of depredation and violence there specified, such as, at one point closing the waste gates, for the purpose of overflowing the banks ; at another, opening them and drawing off the water, for the purpose of arresting the navigation; sinking a scow in the canal for a like purpose, &c., that the true import and meaning intended and conveyed could not be misunderstood, even without the aid of averment or innuendo : for every reader would 'understand the publication in the sense imputed from the natural import of the words in the connection *used. Ho introductory or extraneous facts (to be brought up- [ *627 ] on the record, I admit, if essential to the libellous meaning,) were necessary here, as that appears fully and explicitly upon the face of the publication itself: Reading the body of the article, together with the heading, we cannot but see, that “ canal” in the connection, means the Erie canal; “ gates,” the gates of the canal: “ banks,”'the banks thereof, &c.
The principle of the case of Harvey v. French, 2 Maule & Sel. 591, may serve to illustrate this part of the case. The declaration there contained only the usual prefatory statement, with a colloquium, that the libel was published of and concerning the plaintiff, that is to say: “ Threatening letters. The Middlesex grand-jury have returned a true bill against a gentleman of some property, named French.” Meaning the plaintiff. It then averred, that the plaintiff would verify, that the defendant meant to *478 insinuate, and have it understood, that the plaintiff had been guilty of sending a threatening letter to one T., with a view to extort money. The plaintiff had a verdict and judgment, and the case was carried to the exchequer chamber. The court admitted the innuendo, at the end of the count was not warranted by the introductory matter, but held, that the publication was libellous, per se, and that therefore the innuendo might be rejected as surplusage. Lord Ch. J. Tenterden said, that it was clear, from the more modern decisions, that courts were to understand the words of the libel in the same sense in which the rest of the world would read them : according to their plan and ordinary import; and that reading together the heading, “ Threatening letters,” with the rest of the libel, he could not possibly put any other construction upon it than that the indictment had been preferred against the plaintiff for sending the threatening letters. In the case before us we are not under the necessity of rejecting the innuendoes, as they but express the meaning which the words of the article, in our judgment, per se, import, when read in connection with the heading.
Judgment for the plaintiff.